UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RODERICK K. GODBOLT | CIVIL ACTION |
| VERSUS | NO. 10-1870 |
| N. BURL CAIN, WARDEN STATE OF LOUISIANA | SECTION "N" (6) |

## ORDER AND REASONS

Before the Court is the Petition of Roderick K. Godbolt ("Godbolt" or "Petitioner") for relief pursuant to 28 U.S.C. § 2254. For the reasons stated herein, Godbolt's request for an evidentiary hearing is **DENIED**, and the habeas corpus relief he seeks pursuant to § 2254 is also **DENIED**.

## BACKGROUND FACTS

On January 5, 2004, petitioner broke into a 1988 Nissan Stanza that belonged to Chris Hogan ("Hogan"), and removed the stereo from the dash compartment of the car, tearing out the chassis and mounting plate for the stereo. Hogan's vehicle was parked on the side of his residence in Bogalusa, Louisiana. Hogan's cousin, Kevin Tillman ("Tillman"), was awakened by the noise, which he described as the shattering of glass. The Bogalusa Police Department was summoned and arrived at the scene. Petitioner was charged by Bill of Information with simple burglary, in violation

1

of La. R.S. 14:62. After entering a not guilty plea, the petitioner was convicted by a jury of this charge on April 27, 2005. The trial court denied Godbolt's Motion for Post-Verdict Judgment of Acquittal and Motion for New Trial. Godbolt was then sentenced to six (6) years imprisonment at hard labor, and the trial court further denied his Motion to Reconsider this sentence. Later, petitioner was adjudicated a third felony habitual offender.[1] The trial court vacated the previously-imposed sentence, and sentenced Godbolt to life imprisonment at hard labor without the benefit of parole.

Godbolt appealed his conviction and sentence, both of which were affirmed on November 3, 2006. See *State v. Godbolt*, 950 So.2d 727 (La. App. 1 Cir. 11/3/06). Petitioner sought no further appellate relief.

On October 30, 2008, petitioner filed a *pro se* application for post conviction relief; on November 17, 2008, with the assistance of counsel, petitioner filed another application for post conviction relief. On November 18, 2008, the trial court denied these applications. On April 3, 2009, the Louisiana First Circuit Court of Appeal denied petitioner's writ application (No. 2008-KW-2599); and the Louisiana Supreme Court likewise denied petitioner's writ application on May 28, 2010 (No. 2009-KH-1771).

---

[1] The trial court specifically found that the State proved the following predicate convictions (the offense and date of conviction are hereby noted): distribution of cocaine on March 13, 1995; possession of cocaine on November 15, 1994; simple burglary of an inhabited dwelling on November 15, 1994; distribution of cocaine on November 15, 1994; distribution of cocaine on November 15, 1994; distribution of cocaine on May 10, 1993; and distribution of cocaine on May 10, 1993. The trial court further specified that the defendant was being sentenced pursuant to La. R.S. 15:529.1(A)(1)(b)(ii). At least two of the defendant's prior felonies, along with the instant conviction, mandate the imposed life sentence pursuant to that section of the habitual offender law.

On June 28, 2010, petitioner filed the subject habeas petition. In response, the state maintains that Godbolt's petition is untimely under 28 U.S.C. § 2244, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").

## LAW AND ANALYSIS

### A.  General Law Governing § 2254 Applications

This habeas proceeding is subject to the AEDPA, 28 U.S.C. § 2254, because Godbolt filed his federal petition on June 28, 2010, well after AEDPA's effective date. See *Lindh v. Murphy*, 521 U.S. 320, 335–36 (1997). "Under AEDPA, if a state court has adjudicated a habeas petitioner's claims on the merits, he may receive relief in the federal courts only where the state court decision 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007), (quoting 28 U.S.C. § 2254(d)), *cert. denied*, -- U.S. –, 129 S.Ct. 176, 172 L.Ed.2d 44 (2008).

"A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." *Gray v. Epps*, 616 F.3d 436, 439 (5th Cir. 2010) (citing *Williams v. Taylor*, 529 U.S. 362, 404–08, 120 S. Ct. 1495 (2000)). To merit habeas relief, a state habeas court's application of federal law must be not only incorrect but "objectively unreasonable." *Renico v. Lett*, –U.S. –, 130 S. Ct. 1855, 1865, 176 L.Ed.2d 678 (2010). *See also*, *Shriro v. Landrigan*, 550 U.S.465, 473, 127 S.Ct. 1933,

3

1939, 167 L.Ed.2d 836 (2007)( "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.")

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

### B.     Timeliness and Failure to Exhaust State Remedies

Under the AEDPA, a petitioner has one year within which to bring his habeas corpus claims pursuant to 28 U.S.C.§ 2254, with this one year period commencing to run from "the latest of" either the date the petitioner's state judgment became final or the expiration of his time for seeking review.  *See* 28 U.S.C. § 2244(d)(1) (West 2010), as amended by the AEDPA, P.L. 104-132, 110 Stat. 1220.  In this case, petitioner's judgment became final on November 17, 2006, when the 14-day deadline (after the First Circuit affirmed the conviction and sentence) for seeking rehearing expired, and his time for seeking review ended December 3, 2006, when his 30-day time limit for seeking relief from the Louisiana Supreme Court expired.[2]   Thus, petitioner had a year from December 3, 2006, until December 3, 2007, to timely seek federal habeas corpus relief.

---

[2]La. Supreme Court Rule X, Section 5(a) provides, in pertinent part:
An application seeking to review a judgment of the court of appeal either after an appeal to that court, or after that court has granted relief on an application for supervisory writs ... or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal....

Petitioner did not file the instant action until June 28, 2010, nearly three and a half years after his limitation period expired. Thus, petitioner's federal habeas corpus application must be dismissed as untimely, unless the one-year statute of limitations period was interrupted as set forth in 28 U.S.C. § 2244(d)(2). Under that statutory provision, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

As noted earlier, petitioner, on October 30, 2008, filed an application for post-conviction relief with the state district court. At that point, however, petitioner was over ten months beyond his one-year prescriptive period. As no facts have been presented warranting the application of equitable tolling, a doctrine that applies in rare and exceptional circumstances and principally where the petitioner has been actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights, *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), the instant petition is untimely and can be dismissed with prejudice for this reason alone.

**C.    Sufficiency of the Evidence (Error 1) and Ineffective Assistance of Counsel (Error 2)**

Even if timely, Godbolt is not entitled to relief on the merits:

**1.    Sufficiency of the Evidence (Petitioner's Claim of Innocence) (Error 1)**

In this assignment of error, Godbolt claims that he is actually innocent of the crime charged, and that, had an evidentiary hearing been held, he could have called Tillman as a witness (see Petition, pp. 11-12). Godbolt generally claims that he should have been afforded a post-trial

evidentiary hearing, wherein he could have presented Tillman's testimony, as well as the testimony of others, to establish that he did in fact have permission from the owner of the vehicle, Hogan, to remove the radio. This, however, is at odds with the very testimony offered at trial. This record testimony was cited by the Louisiana First Circuit Court of Appeal on Page 5 of its opinion:

> State witness Dwayne Hogan testified that he and Kevin Tillman alerted Chris Hogan when they realized someone was outside of the home. When they looked outside, they observed the defendant standing near Chris Hogan's car with a radio in his hand. Chris Hogan and Kevin Tillman physically restrained the defendant until the police arrived.
>
> Chris Hogan testified that he had installed a new stereo in his car two weeks prior to the instant offense. After being alerted by his nephew and cousin, Chris Hogan walked outside of his residence and observed the defendant standing outside with the stereo in his hand. The rear passenger-side window of Chris Hogan's vehicle was shattered. Chris Hogan knew the defendant and immediately **\*\*6** recognized him. Chris Hogan stated, "When I come out, he [the defendant] was getting ready to run, so I apprehended him." The defendant had a knife in his hand at the time. Kevin Tillman was able to remove the knife from the defendant's hands as they apprehended him. Chris Hogan also observed a tire iron at the scene and concluded that the defendant used it to shatter the car window. The console dashboard area of the vehicle was damaged. Chris Hogan testified that he had not given the defendant permission to enter his vehicle or his premises.
>
> During his trial testimony, the defendant admitted to breaking into the vehicle and taking the stereo. The defendant also admitted that Chris Hogan did not give him permission to enter the vehicle or take the stereo. The defendant stated that he had been fixing radios and reselling them during the time period in which the offense occurred. According to the defendant, Kevin Tillman had given him permission to take a broken radio out of Kevin Tillman's vehicle. The defendant entered Chris Hogan's vehicle mistakenly believing that it belonged to Kevin Tillman, since he had previously observed Kevin Tillman driving the vehicle. Thus, at the time of the forced entry, the defendant thought that he had permission to take the stereo. The defendant stated that he was intoxicated at the time of the offense. The defendant testified that several months after the offense he apologized to Chris Hogan and paid nearly one hundred dollars restitution. The defendant testified that the offense was not committed intentionally, stating, "I just went in the wrong car. If I would have went in Tillman's car, that would have been different, but Chris didn't give me

> permission to go in his car, and I was intoxicated, I was drunk that day, and I just misjudged some things."
>
> The defendant argues that he believed that he had permission to enter the vehicle at the time of the offense, but at the same time admits that he was intoxicated at the time of the offense and exercised poor judgment. There was no evidence presented **\*732** as to the amount of alcohol consumed or the exact time it was **\*\*7** consumed. The circumstances do not establish that defendant's alleged intoxication precluded the presence of the specific criminal intent required in simple burglary. Viewing this evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have determined that the defendant entered the vehicle with the specific intent to commit a theft therein. Accordingly, we find that a reasonable juror could have excluded the unreasonable hypothesis that the defendant mistakenly believed that he had permission to break into a vehicle and destructively remove a stereo. This assignment of error lacks merit.

Although this passage does not reflect that Tillman testified at trial, petitioner has made no showing that Tillman was unavailable to testify at trial. More importantly, it is undisputed that Tillman was **not** the owner of the vehicle into which petitioner unlawfully entered. Rather, Hogan is the owner of the vehicle, and his sworn testimony was indeed presented to the jury, subject to cross examination. Accordingly, regardless of whether Tillman granted petitioner permission to enter his own vehicle to retrieve the radio, such fact was (a) presented to the jury by the defendant himself, (b) in no way constitutes permission granted by Hogan to enter *his* vehicle, and (c) does not impact the jury's evaluation of the credibility of the witnesses who did testify, including Godbolt and Hogan.

Also attached to Godbolt's Petition is a May 29, 2006 notarized statement of Chris Hogan, wherein he claimed: "Without my knowledge, my nephew, Dewayne Hogan, gave Roderick Godbolt permission to remove a radio out of a car in his possession in November 2003. At the time I was unaware of their agreement. I, Chris Hogan, was the owner of the car. I do not wish to file

charges on Roderick Godbolt due to the fact that Mr. Godbolt paid restitution to me for the radio." This post-trial statement, however, is of no moment, since Chris Hogan in fact gave sworn testimony at Godbolt's trial, wherein he testified that he had installed a new stereo in his car two weeks prior to the commission of this offense on January 5, 2004. Moreover, Chris Hogan now admits that "permission" was given by his nephew, Dwayne Hogan, "without my knowledge", calling into question how Dwayne Hogan could possibly have given permission to a third person over a vehicle (and radio contained therein) that he did not own. Lastly, Dwayne Hogan himself testified at petitioner's trial, and thus would have no doubt explained the circumstances of his "permission", had he been given it. The sworn statement attached to the petition is not helpful.

This assignment of error is without merit.

### 2. Ineffective Assistance of Counsel (Error 2)

The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions.[3] In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-prong test to evaluate ineffective assistance claims. To obtain reversal of a conviction under the *Strickland* standard, the defendant must prove that counsel's performance fell below an objective standard of reasonableness[4] and that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair

---

[3]*See McMann v. Richardson*, 397 U.S. 759, 711 n.14 (1970) (6th Amendment right to counsel is right to effective assistance of counsel).

[4]*See Strickland*, 466 U.S. at 687-88; *Harris v. Day*, 226 F.3d 361, 364 (5th Cir. 2000) (judicial scrutiny of counsel's performance must be highly deferential, given "strong presumption" that counsel's conduct was reasonable professional conduct).

Case 2:10-cv-01870-KDE-LM   Document 14   Filed 02/01/11   Page 9 of 11

outcome in the proceeding.[5] A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other.[6] In deciding whether a counsel's performance was ineffective under *Strickland*, a court must consider the totality of the circumstances.[7]

Under the performance prong of *Strickland*, there is a "strong presumption"[8] that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance."[9] Courts have declined to characterize counsel's performance as ineffective assistance when counsel acted according to the defendant's restrictions on strategy,[10] when the defendant failed to provide counsel with complete and accurate information,[11] or when counsel refused to "assist[] the client in

---

[5] *See Strickland*, 466 U.S. at 687; *see also Williams v. Taylor*, 529 U.S. 362, 396-99 (2000).

[6] *See* 466 U.S. at 697; *see*, *e.g.*, *Martin v. Cain*, 246 F.3d 471, 477 (5th Cir. 2001) (court need not address *Strickland*'s performance prong because defendant could not show prejudice).

[7] *See* 466 U.S. at 690 (court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of reasonable professional judgment"); *see also Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[T]he right to effective assistance of counsel. . . may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial.")

[8] In interpreting the prejudice prong, the Supreme Court has identified a narrow category of cases in which prejudice is presumed. *See Strickland*, 466 U.S. at 692 (1984). The presumption applies when there has been an "[a]ctual or constructive denial of the assistance of counsel altogether", when counsel is burdened by an actual conflict of interest, or when there are "various kinds of state interference with counsel's assistance." *See id; Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). In these situations, prejudice is so likely to occur that a case-by-case inquiry is unnecessary. The circumstances for presuming prejudice are not present herein. *See Strickland*, 466 U.S. at 692; *see also U.S. v. Cronic*, 466 U.S. 648, 658 (1984).

[9] *Strickland*, 466 U.S. 668, 689 (1984).

[10] *See, e.g.*, *Moore v. Johnson*, 194 F.3d 586, 607 (5th Cir. 1999) (counsel's purported failure to expend pretrial resources in an effort to unearth evidence that may have contradicted defendant's alibi defense was not ineffective assistance because defendant chose and insisted on alibi defense).

[11] *See e.g.*, *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997) (counsel's failure to avoid eliciting damaging testimony from defense witness was not ineffective assistance because defendant did not inform counsel he molested daughter).

presenting false evidence or otherwise violating the law."[12] Since prejudice is not presumed, the defendant must show that counsel's errors were prejudicial and deprived defendant of a "fair trial, a trial whose result is reliable."[13] This burden generally is met by showing that the outcome of the proceeding would have been different but for counsel's errors.[14] However, in some cases, the court will inquire further to determine whether counsel's ineffective assistance "deprive[d] the defendant of a substantive or procedural right to which the law entitles him." In the context of a guilty plea, a defendant can satisfy the prejudice prong by demonstrating that but for counsel's deficient performance, a reasonable probability exists that the defendant would not have pleaded guilty and would have insisted on a trial.[15] Similarly, in the context of a procedurally defaulted appeal, a defendant can satisfy the prejudice prong by demonstrating that there is a reasonable probability that, but for counsel's deficient failure to consult with defendant about an appeal, defendant would have timely appealed.[16]

---

[12]*Nix v. Whiteside*, 475 U.S. 157, 166, 171 (1986) (counsel provided effective assistance by preventing defendant from committing perjury).

[13]*Strickland*, 466 U.S. at 687. Unlike the performance prong of the *Strickland* test, which is analyzed at the time of trial, the prejudice prong of the *Strickland* test is examined under the law at the time the ineffective assistance claim is evaluated. *See Lockhart v. Fretwell*, 506 U.S. 364, 367-68 (1993).

[14]*See Williams v. Taylor*, 529 U.S. 362, 391-93 (2000). To prove prejudice, the defendant must establish a "reasonable probability" that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 692. The Court has rejected the proposition that the defendant must prove more likely than not that the outcome would have been altered. *See id.; see also Woodford v. Viscotti*, 537 U.S. 19, 22-23 (2002).

[15]*See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see e.g. Daniel v. Cockrell*, 283 F.3d 697, 708 (5th Cir. 2002).

[16]*See Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000).

In this instance, Godbolt again cites to the November 2006 sworn statement from Chris Hogan, which he asserts "confirms petitioner's trial defense and Kevin Tillman was not present at trial to refute the state's mockery of his defense." Again, although Godbolt claims that "the jury was lead to believe through the state's case that no permission to remove the radio was ever given" (p. 16), the record is clear that petitioner himself testified that Tillman indeed gave permission to remove the radio *from Tillman's vehicle*, a fact which was uncontested. The Court has already commented on the sworn statement of Chris Hogan, which in no way creates an issue as to the deprivation of petitioner's constitutional rights at trial, since both Chris Hogan and Dwayne Hogan testified under oath in front of the jury, subject to cross examination, in addition to the testimony offered by petitioner himself.

Thus, this assignment of error is also without merit.

## CONCLUSION

For the above-stated reasons, the Petition of Roderick K. Godbolt for relief pursuant to 28 U.S.C. § 2254 is **DENIED**, and application for federal habeas corpus relief is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 1st day of February, 2011.

								_____
									**KURT D. ENGELHARDT**
									**United States District Judge**